607 So.2d 1220 (1992)
Shirley Chamblee KIRK
v.
Judy B. KOCH.
No. 89-CA-740.
Supreme Court of Mississippi.
October 8, 1992.
Davis Hall Smith, Colorado Springs, Colo., for appellant.
Thomas R. Jones, Bourdeaux & Jones, Meridian and Edward Blackmon, Blackmon Blackmon & Evans, Canton, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
In October 1987, Judy Koch (formerly Judy Jeffries) sued Shirley Kirk in the Circuit Court of Madison County for the torts of alienation of affections and criminal conversation. The jury rendered a verdict in favor of Mrs. Kirk on the charge of criminal conversation and in favor of Mrs. Koch on the charge of alienation of affections and awarded $50,000 to Judy Koch. The defendant, Kirk, filed a motion for a new trial, j.n.o.v., and a remittitur, which were *1221 denied by the Circuit Court of Madison County. Kirk now appeals the decision and presents three issues on appeal:
I. Whether the evidence in the record is sufficient, prima facie, to establish all of the elements of the tort of alienation of affections.
II. Whether the lower court erred in refusing to allow the Defendant to prove that the real cause of the Plaintiff's marital disharmony was her husband's adultery with a woman, who is not a party to this action.
III. Whether the damages awarded are excessive.

STATEMENT OF THE FACTS
The plaintiff, Judy Koch (Koch), married Jim Jeffries (Jeffries) in August 1984. It was Koch's third marriage and Jeffries' fifth marriage. They each had a child by a previous marriage, but none were born of their marriage. The defendant, Shirley Kirk (Kirk) and her late husband, James Kirk, had known Jeffries for about twenty years. Koch had never heard of Kirk or her husband, until he was killed in a airplane crash in October 1986. Jeffries and Mr. Kirk began talking to each other in January 1985 about starting an aerial film-making business. Jeffries had worked as a television writer and producer. Mr. Kirk decided to wait to start this business because he was constructing a home-built airplane at the time.
Soon after Mr. Kirk's death, Jeffries began telephoning and visiting Kirk and her daughter for the purpose of consoling them. Koch had no knowledge that Jeffries was seeing Kirk. In December 1986, Kirk agreed to finance the aerial film-making business and gave Jeffries a check for $21,700. On Christmas morning in 1986, Koch found a deposit slip for $21,700, representing a deposit made to Jeffries' personal account at a bank in Philadelphia, Mississippi. Jeffries refused to explain the deposit or the source of the money to Koch. The next day Jeffries told Koch that an investor had agreed to finance the business venture but failed to reveal that Kirk was the investor. On December 27, 1986, Jeffries and Kirk executed a written agreement setting out the plans for the venture.
In January 1987, Jeffries took a job in Jackson, Mississippi, with Beltone. Jeffries stayed in Jackson three nights a week and stayed at the Jeffries' home in Meridian four nights a week. In early February, Jeffries began to stay in Meridian only one to two nights a week.
After coming home to Meridian in an unfamiliar gray Mazda pick-up truck one evening, Koch became suspicious. After discovering the truck was registered to the late Mr. Kirk, Koch and her friend went to the Kirk home in Jackson, where they saw both Jeffries' car and the gray Mazda pick-up truck in the driveway. Koch testified that Jeffries' car was still in the Kirk driveway when she left at 11:30 p.m. That same evening, Koch also went to see a motor home that Jeffries claimed to have lived in while in Jackson. Koch testified that the motor home was not hooked up for electricity.
When Koch left the Kirk home around 11:30 p.m., she used a public telephone to call the Kirk home. When a female answered, Koch asked to speak to Jim Jeffries. The female voice said "hold on", the line was held open and then the phone was hung up on the Kirk end.
On April 25, 1987, Koch determined that the investor was Kirk and confronted Jeffries with this information. Koch asked Jeffries to move out and he did. Jeffries testified that he tried to reconcile with Koch but Koch's testimony disputes this. Koch testified that she tried to call him to get him to come back, but he did not return her calls.
In May 1987, Jeffries moved into Kirk's home. He stayed there for approximately six weeks. After Jeffries had moved into the Kirk home, Koch travelled to Jackson and observed Jeffries and Kirk in the driveway of the Kirk home. After she observed this, Koch hired a private investigator to place Jeffries under surveillance. This private investigator and one of his employees observed Jeffries at the Kirk home, but never witnessed any expression or gesture of affection between Kirk and Jeffries.
*1222 During Kirk's association with Jeffries, she wrote a number of checks to Jeffries. Kirk testified that some were loans and some were for business. Kirk paid for some of Jeffries' medical bills and also paid for Jeffries' attorney in his divorce from Koch. At trial, the phone bills of both Kirk and Koch were introduced into evidence. These revealed telephone numbers in common on each of the bills which could be identified with Jeffries' children, relatives and friends and places where Jeffries was staying on the road. The calls to or from Kirk's residence dated as early as December 1986 and continued throughout the first half of 1987.
In 1987, Jeffries' daughter, Julie Jeffries, moved from California to Jackson into the Kirk home. Kirk had known Julie since Julie was two years old. At the time of trial, Julie had been living with Kirk for a year, and testified she had never witnessed any expression of affection between Jeffries and Kirk.
Koch obtained a divorce from Jeffries in May 1987 and had her surname restored to Koch. Koch filed suit against Kirk in October 1987 for alienation of affections and criminal conversation.

I. Whether the evidence in the record is sufficient, prima facie, to establish all the elements of the tort of alienation of affections
Kirk argues on appeal that the jury's verdict against Kirk on the charge of alienation of affections is not supported by the evidence. She argues that there was no intent or malice on her part to interfere with the marriage of Jeffries and Koch and also that Jeffries' affections for his wife were never diminished.
The elements of alienation of affections are:
(1) wrongful conduct of the defendant;
(2) loss of affection or consortium; and
(3) causal connection between such conduct and the loss.
41 Am.Jur.2d Husband & Wife § 466, at 394. See also Stanton v. Cox, 162 Miss. 438, 139 So. 458 (1932). The tort of alienation of affections was recently visited by this court in Camp v. Roberts, 462 So.2d 726 (Miss. 1985).
The appellant Kirk cites Stanton v. Cox, 162 Miss. 438, 139 So. 458 (1932), one of the first cases in which this Court discussed the tort of alienation of affections. In Stanton, this Court stated: "In order to sustain an action for alienation of the husband's affections, it must appear ... that there had been a direct interference on the defendant's part, sufficient to satisfy the jury that the alienation was caused by the defendant, and the burden of proof is on the plaintiff to show such interference... . But to maintain this action it must be established that the husband was induced to abandon the wife by some active interference on the part of the defendant." Id. 139 So. at 460 (citations omitted).
Kirk puts great emphasis on the language of "direct interference." She argues that the record is devoid of any evidence of direct and intentional interference in the marriage of Jeffries and Koch. Kirk notes that there is no evidence that she and Jeffries engaged in sexual relations, nor any evidence that Kirk and Jeffries "hugged, kissed, caressed, or embraced ... in an amorous and affectionate manner." Appellee Koch responds by pointing to Kirk's conduct over a period of months. Koch notes that Kirk wrote a number of checks to Koch's husband, gave him free use of a vehicle, allowed him to live in her home for approximately six weeks, financed his divorce from Koch, brought his child by a former marriage into her home to live with her, and paid for medical treatment for him. This conduct, Koch argues, is sufficient to prove there was a direct and intentional interference by Kirk into Koch and Jeffries' marriage.
This Court's scope of review, when called upon to review a verdict returned by a duly empaneled and sworn jury, was stated in City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983):
When the court considers whether the defendant is entitled to a judgment as a matter of law, the court should consider the evidence in the light most favorable to plaintiff, disregard any evidence on the part of defendant in conflict with that favorable to plaintiff, and if the *1223 evidence and reasonable inference to be drawn therefrom would support a verdict for plaintiff, the jury verdict should not be disturbed.
Id. at 478 (quoting General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss. 1969)). The Locklar Court also stated:
Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Some guesswork and speculation are necessarily involved in practically all jury verdicts, including those no one would dream of suggesting be disturbed.
Id. at 478.
Based on the evidence presented in this case, it is the opinion of this Court that the jury was justified in its verdict. The jury could have inferred from Kirk's conduct that she directly and intentionally interfered with the marriage of Koch and Jeffries and this caused Jeffries' affections for his wife, Koch, to be alienated. The case was submitted to the jury on conflicting facts and those facts were resolved in favor of the plaintiff Koch.

II. Whether the lower court erred in refusing to allow the Defendant to prove that the real cause of the Plaintiff's marital disharmony was her husband's adultery with a woman who is not a party to this action
Before trial, Kirk filed a motion in limine to prohibit Koch from proving she obtained a divorce from Jeffries on the ground of adultery. The lower court granted this motion. Kirk now argues on appeal that as a condition to granting this motion in limine, the court prohibited Kirk from presenting evidence at trial that Jeffries committed adultery with another woman, who is not a party to this action. Kirk argues that it was this woman, and not Kirk, who disrupted the marital relationship.
Kirk argues that the adulterous relationship is mentioned by Jeffries in his affidavit which is attached as an Exhibit to Kirk's motion for summary judgment. As Koch points out, the allegation that the court's ruling on Kirk's motion in limine was conditioned upon another evidentiary ruling is not reflected in the record. Moreover, the record does not reveal an attempt by the Kirk to introduce this evidence at trial. In fact, the record is silent as to this entire matter.
In her reply brief, Kirk states that it is her belief that the trial court granted the motion in limine only on the condition that she not present evidence of Jeffries' adulterous affair with another woman. Kirk states that she requested a certificate from the trial court to amend the record accordingly, but no such certificate has been provided to this Court.
This Court will not disturb a judgment based on allegations not supported by the record. In Vinson v. Johnson, 493 So.2d 947 (Miss. 1986), we stated:
... [appellant] also ignores the principle universally applied by appellate courts that in the absence of anything appearing to the contrary, a judgment of court of competent jurisdiction imports verity, and is presumed valid. In the absence of anything in the record appearing to the contrary, this Court will presume the trial court acted properly, and if evidence was necessary, that court heard sufficient evidence to support the judgment.
Id. at 949 (citations omitted). See also Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973).
In Dazet v. Bass, 254 So.2d 183 (Miss. 1971), this Court stated:
When a party seeks reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented and there must be a specific statement of what the answers or testimony of the witness would be. The reasons for this rule are that the court must be able to see from the record itself whether the offered testimony would be material and of benefit to the merits of the case, and whether its exclusion was actually *1224 harmful and prejudicial to the offerer.
Id. at 187-88.
Appellant Kirk cannot place the trial court in error on a matter that is not in the record. This issue is not properly before this Court and therefore cannot be considered.

III. Whether the damages awarded are excessive
At trial, the jury awarded Koch damages in the amount of $50,000 for the tort of alienation of affections. Kirk argues on appeal to this Court that, if the judgment of the lower court is not reversed, this Court should reduce the damage award. Kirk argues that the jury may have been inflamed by the accusation of sexual relations between Kirk and Jeffries, which was not proven at trial. Kirk also argues that due to the short duration of the Jeffries' marriage, the fact that no children were born of the marriage, and because both Koch and Jeffries had been married a number of times before, the $50,000 award was excessive.
Koch admits that there is no monetary measuring stick for her damages. However, Koch contends that the damages awarded are appropriate and notes that more damages could have been awarded by the jury, since Koch requested $75,000 in actual damages and $50,000 in punitive damages. Koch cites Tribble v. Gregory, 288 So.2d 13 (Miss. 1974), in which this Court dealt with the loss of consortium by a wife. This Court stated:
The interest sought to be protected is personal to the wife and arises out of the marriage relation. She is entitled to society, companionship, love, affection, aid, services, support, sexual relations and the comfort of her husband as special rights and duties growing out of the marriage covenant. To these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home. All of these are included in the broad term, "conjugal rights." The loss of consortium is the loss of any or all of these rights.
... .
Consortium does not consist alone of intangible mental and emotional elements, but may include services performed by the husband for the wife which have monetary value.
Id. at 16.
The jury's verdict is a finding of fact. The award must be left undisturbed unless this Court can say that no rational jury could on this proof have assessed damages of $50,000. City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss. 1983). This Court stated in Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975), that it would not vacate or reduce a damage award unless it is so out of line as to shock the conscience of the Court. The conscience of the Court is not shocked by the award here under consideration.
For the reasons stated above, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER and PITTMAN, JJ., concur.
SULLIVAN and McRAE, JJ., dissent.
ROBERTS, J., not participating according to Supreme Court Internal Rules.