966 So.2d 1262 (2007)
In the Matter of the ESTATE OF Leslie W. CHAPMAN, Deceased.
Leslie Gary Chapman, Appellant,
v.
Brian Anthony Chapman, Bruce William Chapman, Lesley Darlene Reeves, and Betty Ruth Chapman, Appellees.
No. 2006-CA-01585-COA.
Court of Appeals of Mississippi.
October 23, 2007.
Edwin L. Bean, McComb, attorney for appellant.
John Harris White, Jackson, Rachel L. Wilson, attorneys for appellees.
*1263 Before LEE, P.J., GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On April 1, 2003, the Chancery Court of Pike County admitted to probate in common form the last will and testament of Leslie W. Chapman. The will bequeathed all of Leslie's real and personal property to his wife, Betty Chapman. Thereafter, Gary Chapman, Leslie's son, filed a petition to contest the will. On August 17, 2006, the Chancery Court of Pike County held a trial and entered an order upholding the validity of the will. Aggrieved by that judgment, Gary appeals. He asserts that the chancery court erred when it found that the will was not the product of a confidential relationship between Leslie and his wife, Betty, and he argues that she did not overcome the presumption of undue influence created by the confidential relationship.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On June 18, 1997, Leslie, Betty, and their daughter, Lesley Darlene Reeves, traveled to the law office of John Price in order to draft a will for Leslie. The will drafted by Price left Leslie's entire estate to Betty. At the same time, Leslie had Price draft a deed conveying approximately five acres of land to Reeves.[1]
¶ 4. Leslie died on September 10, 1998, and the will was probated in common form on April 1, 2003. Apparently, Betty had placed the will in a security deposit box and did not attempt to probate it until after Gary began to demand to see it. Gary subsequently filed suit alleging the will was void, and a trial was held on August 17, 2006.
¶ 5. Besides getting the will drafted and deeding his daughter the land, on the day Leslie executed his will, he made arrangements for his funeral and got his affairs in order with the Social Security office. Testimony revealed that Leslie decided to "get his ducks in a row," as his doctor suggested, after a hospital visit was necessitated because of his difficulty swallowing. His doctor diagnosed him with esophageal cancer and estimated that he had only six months to live.
¶ 6. Testimony indicates that, while signing the will, Leslie, Price, and Price's secretary, Sue Moak, were the only individuals in Price's office. While Betty and Reeves accompanied Leslie, they waited outside while he signed the will. An audiotape that Price made of the signing of the will also reflects that only those three were present. Furthermore, Leslie clearly states on the tape that the will was his own and that it reflected his wishes.
¶ 7. A number of witnesses testified that Leslie was a strong-willed man and was not one to be influenced by another person. Gary did not offer any testimony to rebut that or to indicate that Leslie was of a weakened mind, but he did bring out the fact that Leslie drank most every day, sometimes to excess.
¶ 8. There was conflicting testimony as to what Leslie had promised his children in the will. Gary said that Leslie told him he would be taken care of in the will. However, there was apparently a conversation in which Leslie said that the children would not receive anything in the will because they had not done anything to earn it. That conversation seemed to indicate that Leslie was leaving everything to Betty because he also said that she would do what was right.
*1264 ¶ 9. Betty and Leslie married on February 27, 1965, and they remained married for more than thirty-three years until Leslie's death in 1998. In 1985, the couple purchased a pool hall in Summit, Mississippi, and they jointly operated it until Leslie's death.
¶ 10. Ultimately, the chancellor found that the will was not the product of undue influence and upheld it as valid. She found that Gary was treated equally with Leslie's other three children, that such a disposition to a wife of more than thirty years was not unexpected, and that the relationship between the two was not such that Betty "was able to impart her will upon [Leslie's]." Gary now appeals the decision of the chancellor.

STANDARD OF REVIEW
¶ 11. We review a chancellor's findings of fact under a manifestly wrong/clearly erroneous standard. Generally, "[t]his Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002).

ISSUES AND ANALYSIS
¶ 12. In his two points of error, Gary claims (1) that there existed between Leslie and Betty a confidential relationship, which created a presumption of undue influence regarding the will and its execution and (2) that Betty did not overcome the presumption of undue influence created by that relationship.
¶ 13. The burden of proving the existence of a confidential relationship is on the party who alleges it. Estate of Dunn v. Reilly, 784 So.2d 935, 940(¶ 13) (Miss.2001). If there exists a confidential relationship between the testator and a beneficiary, then a presumption of undue influence arises. Croft v. Alder, 237 Miss. 713, 722-23, 115 So.2d 683, 686 (1959).
¶ 14. For this Court to set aside a will on the grounds of undue influence on the part of a spouse "it must be shown that the devisee spouse used undue methods for the purpose of overcoming the free and unrestrained will of the testator so as to control his acts and prevent him from being a free agent." Genna v. Harrington, 254 So.2d 525, 529 (Miss.1971). The court in Genna went on to state, "It is undoubtedly true that a husband or wife may exercise undue influence upon the other spouse, but the mere fact that there is a close relationship between parties in a marriage does not mean that one's influence upon another is undue influence." Genna, 254 So.2d at 528. In Genna, the supreme court found that the chancellor properly refused a jury instruction on a presumption of undue influence arising solely out of the confidential relationship of marriage. Id. at 529.
¶ 15. "Nor is influence ordinarily considered undue which arises out of sympathy, kindness, attention, attachment or affection, gratitude for past services, desire of gratifying the wishes of another or of relieving distress, claims of kindred and family or other intimate personal relations, love, esteem, social relations, prejudices, or flattery." Burnett v. Smith, 93 Miss. 566, 572, 47 So. 117, 118 (1908) (emphasis added).
¶ 16. The court noted that there was a close relationship between Leslie and Betty, but such was to be expected of two people married for more than thirty-three years. Nevertheless, the chancellor went on to address their relationship. Specifically, she found that the relationship did not rise to the level that Betty was able to *1265 impart her will upon Leslie's. The witnesses all indicated that Leslie was a strong-willed man, and the chancellor even pointed out that he "resoundingly" affirmed the will on the audio recording of the will signing, and he did not appear to be under any constraint. Price stated that Leslie "was the kind of person that took charge," that he "dominated the conversation," and that Price "never got the feeling that [Betty] had any ability to make [Leslie] do anything."
¶ 17. Ultimately, the chancellor found the will to be reasonable in that it left everything to the decedent's wife of thirty-three years, who was also his business partner for approximately thirteen years. There was no evidence that Betty used any undue methods to influence Leslie to make the will. Her only actions involving the will were traveling with Leslie to his attorney's office and possibly discussing it with Leslie. Lastly, Gary did not present any evidence that Leslie's will was overcome, that he was controlled, or that he was prevented from being a free agent.
¶ 18. Since the chancellor found that there was no confidential relationship that gave rise to a presumption of undue influence, Betty was not required to overcome such a presumption by clear and convincing evidence. Under Mississippi Code Annotated section 91-7-27 (Rev.2004), Betty made her prima facie case for the will's validity when she probated it in common form.
¶ 19. As stated previously, Gary had the burden of proof of establishing a confidential relationship. Dunn, 784 So.2d at 940(¶ 13). The chancellor found he did not meet that burden. Accordingly, we find that the chancellor was not manifestly in error nor did she abuse her discretion in upholding Leslie's will. These issues are without merit.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Gary did not contest the validity of the deed to Reeves.