GRIFFIS, P. J.,
for the Court:
¶ 1. Chrissy Strickland filed a complaint against Melissa Simmons and asserted claims for alienation of affection and intentional infliction of emotional distress. The jury returned a verdict in favor of Chrissy and awarded $87,500 in compensatory damages and $500 in punitive damages. On appeal, Melissa argues that: (1) the jury’s verdict on liability is against the overwhelming weight of the evidence; (2) the trial judge erred when he excluded from evidence testimony that would have shown that Chriss/s relationship with Chuck Strickland had begun as an adulterous affair while Chrissy was married to someone else; (3) the trial judge erred when he refused a jury instruction on how Melissa could rebut the presumption that she had acted with malice because she had committed adultery with Chuck; and (4) the trial judge erred when he refused a jury instruction on nominal damages. We find no error and affirm.
FACTS
¶ 2. Chrissy and Chuck were married in 1996. Their son, Charles Wilder Strickland (“Wilder”), was born in 1998. Chris-sy testified that their marriage, while not perfect, was a relatively good marriage for eleven years. Chuck testified that the marriage was more troubled, although he did concede that the marriage was “typical,” in that there were “ups and downs.”
¶ 3. The marriage began to disintegrate in the summer of 2007. They separated on September 17, 2007.
¶4. In June 2007, Chuck, Chrissy, and Wilder were on vacation with Melissa and her then-husband, Lane Simmons, at a camp house on a river in Kiln, Mississippi. Chuck and Chrissy got into an argument. Chrissy packed her bags, grabbed Wilder, and left the camp house without Chuck.
¶ 5. Melissa testified that she and Chuck stayed up talking that night at the camp house. He told her that he was unhappy. After that night, Chuck and Melissa talked to each other frequently. Cell phone records indicated that Melissa called Chuck 107 times between July 26, 2007, and September 17, 2007. Likewise, Chuck called Melissa fifty-one times, often dialing *67 to block the caller identification. At trial, when asked why he would block the caller identification, Chuck testified: “No comment.”
¶ 6. Chuck and Melissa testified that they did not have sex prior to September 17, 2007, the date that Chuck and Chrissy *180 separated. Yet, there was some evidence to the contrary. Lane testified that he found a contraceptive sponge in his and Melissa’s bathroom in early August 2007. Lane had undergone a vasectomy in approximately 1995. In addition, Wilder testified that he saw Chuck and Melissa in bed together at the camp house sometime in the summer of 2007.
¶ 7. On September 16, 2007, Melissa told Lane that she wanted a divorce. According to Melissa, she said that she had been talking to Chuck and that she wanted out of the marriage before things went any further with Chuck. According to Lane, Melissa said that she was in love with Chuck. She left Lane and their marital home the next day.
¶ 8. On September 17, 2007, Chuck told Chrissy that he wanted a divorce. Chuck testified that he said he might be in love with Melissa. According to Chrissy, Chuck said that he was in love with Melissa. Chuck left the marital home that same day.
¶ 9. Both marriages were dissolved by divorce decrees in July 2008. Melissa and Lane were granted an irreconcilable-differences divorce. Chrissy was granted a divorce from Chuck on the ground of adultery.
¶ 10. Chuck and Melissa were married in December 2008. As of the date of trial, Chrissy and Wilder still lived by themselves in the former marital home.
¶ 11. On September 16, 2008, Chrissy filed her complaint against Melissa Simmons asserting claims for alienation of affection and intentional infliction of emotional distress. The circuit court bifurcated the trial. The first phase allowed the jury to consider liability and compensatory damages, and the jury returned a verdict in favor of Chrissy for $87,500 on the alienation-of-affection claim only. The second phase of the bifurcated trial allowed the jury to consider punitive damages, and the jury returned a verdict in favor of Chrissy for $500. Melissa now appeals the judgment.
ANALYSIS

1. Whether the jury’s verdict on liability is against the overwhelming weight of the evidence.

¶ 12. Melissa argues that the verdict is contrary to the overwhelming weight of the evidence. To prevail on her claim of alienation of affection, Chrissy was required to prove by a preponderance of the evidence the following elements: “(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss.” Fitch v. Valentine, 959 So.2d 1012, 1025-26 (¶ 36) (Miss.2007) (citation and quotation omitted). Chrissy was required to show that Melissa, through active interference, persuaded, enticed, or induced Chuck to abandon the marriage. Id. The jury found that Chrissy had proved each element.
¶ 13. When reviewing a jury verdict, this Court must “consider the evidence in the light most favorable to plaintiff, disregard any evidence on the part of defendant in conflict with that favorable to plaintiff, and if the evidence and reasonable inference to be drawn therefrom would support a verdict for plaintiff, the jury verdict should not be disturbed.” Kirk v. Koch, 607 So.2d 1220, 1222-23 (Miss.1992) (citation and quotation omitted).
¶ 14. Viewed in the light most favorable to Chrissy, the evidence established that Chuck and Chrissy had a stable, although not perfect, marriage for eleven years. In the summer of 2007, Chuck and Chrissy were having some problems in their rela *181 tionship. At that point, Melissa began an affair with Chuck. Notably, the cell phone records show that Melissa called Chuck more than twice as much as he called her. A few months later, Chuck abandoned the marriage, saying that he was in love with Melissa. Based on these facts, there was sufficient evidence for the jury to infer that, but for Melissa’s active interference, the marriage of Chuck and Chrissy probably would not have ended.
¶ 15. In Kirk, the Mississippi Supreme Court upheld a jury verdict in an alienation of affection case. Kirk, 607 So.2d at 1222-23. There, Jim Jeffries and recently-widowed Shirley Kirk, who had known each other for approximately twenty years, were partners in a business venture. Id. at 1221. Judy Koch, Jeffries’s wife, discovered that Jeffries was secretly spending significant amounts of time at Kirk’s home, so Koch asked Jeffries to move out of the marital home. Id. They were later divorced. Id. at 1222. There was no direct evidence that Jeffries and Kirk were romantically involved. In fact, a private investigator, who was hired by Koch, failed to obtain any direct evidence that the two were having an affair. Id. at 1221. Koch won a $50,000 judgment against Kirk, and the supreme court affirmed the judgment. Id. at 1224.
¶ 16. Here, there was sufficient evidence that Melissa and Chuck had an extra-marital affair and that the affair had caused the dissolution of Chrissy’s and Chuck’s marriage. Following Kirk, we will not disturb the jury’s verdict. This issue is without merit.

2. Whether the trial judge erred when he excluded from evidence testimony that would have shown that Chrissy’s relationship with Chuck had begun as an adulterous affair.

¶ 17. Prior to trial, Melissa identified Ervin Lee Reddy, Chrissy’s ex-husband, as a potential witness. Chrissy filed a motion in limine to exclude Reddy’s testimony. At the motion hearing, it was established that Reddy would have testified that, during his marriage to Chrissy, Chrissy had an affair with Chuck and ultimately moved in with him. The trial judge granted the motion to exclude Reddy’s testimony. He ruled that Reddy’s testimony was both irrelevant and unduly prejudicial. He stated: “I can’t see how it could be relevant other than to try to impugn the character of one of the parties in the lawsuit.” On appeal, Melissa argues that decision was in error.
¶ 18. Melissa argues that Reddy’s testimony was admissible to impeach Chrissy’s testimony. Chrissy had testified at a pretrial deposition that she and Chuck had not had an affair during her marriage to Reddy. At trial, she denied that she had moved in with Chuck prior to her divorce from Reddy, and she denied that the alleged affair was the reason she and Reddy divorced. Melissa argues that since Chris-sy’s credibility was of vital importance in the case, the trial judge should have allowed her to put on evidence that would have called Chrissy’s credibility into question.
¶ 19. In her brief, Melissa’s argument is one paragraph. She cites not one rule or case as authority. Mississippi Rule of Appellate Procedure 28(a)(6) provides: “The argument shall contain ... citations to the authorities, statutes, and parts of the record relied on.” While it appears her argument refers to Mississippi Rule of Evidence 403, Melissa has the duty to provide this Court with relevant authority to support her argument. She has not. Thus, we are not obligated to review this issue on appeal. See Huff-Cook, Inc. v. Dale, 913 So.2d 988, 991 (¶ 14) (Miss.2005) (citing Williams v. State, 708 So.2d 1358, *182 1362-63 (Miss.1998) (“failure to cite relevant authority obviates the appellate court’s obligation to review such issues”)).

S. Whether the trial judge erred when he denied a jury instruction on how the presumption of malice could he overcome.

¶20. Next, Melissa argues that while the trial judge correctly instructed the jury that adultery raises a presumption of malice, which if unrebutted warrants punitive damages, he erred when he refused to give Melissa’s offered jury instruction on how the presumption could be overcome.
¶ 21. The Mississippi Supreme Court has held that when reviewing a trial judge’s decision to give or deny jury instructions:
[Ojur primary concern is that the jury was fairly instructed and that each party’s proof-grounded theory of the case was placed before it_We ask whether the instruction at issue contained a correct statement of law and was warranted by the evidence.... In analyzing the aggregate jury instructions, defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly — although not perfectly — announce the applicable primary rules of law.
Dunn v. Yager, 58 So.3d 1171, 1200 (¶ 71) (Miss.2011) (citations and quotations omitted).
¶ 22. The trial judge gave jury instruction P-5A, which provides:
The Court instructs you, the jury, that if you find from a preponderance of the evidence that Defendant committed adultery with Chrissy Strickland’s husband, then malice of the Defendant is to be presumed.
Melissa offered jury instruction D-10, which states:
The Court instructs the jury that although malice is presumed if you believe the Defendant committed adultery with the Plaintiffs husband, that presumption can be overcome by the Defendant proving by clear and convincing evidence that there was no malice because there were no affections in the marriage of the Plaintiff and her husband to alienate.
The trial court refused jury instruction D-10. Melissa argues that the trial judge’s denial of jury instruction D-10 was in error because the instruction was necessary to inform the jury how the presumption of malice could be overcome.
¶ 23. Just as with the prior issue, Melissa fails to cite relevant authority. Her brief does attempt to support her argument with two cases that are referred to as “examples.” She cites Jeffreys v. Clark, 251 Miss. 129, 168 So.2d 662 (1964), overruled by Sheffield v. Sheffield, 405 So.2d 1314 (Miss.1981), as an example of “the presumption of a valid marriage.” And, she cites In re Estate of Chapman, 966 So.2d 1262, 1264 (Miss.Ct.App.2007), as an example of “the presumption of undue influence if a person has a fiduciary relationship with the testator in a probate proceeding.” Neither case provides authority for the proposition she argues here.
¶ 24. Thus, we are not obligated to review this issue on appeal. See Huff-Cook, Inc., 913 So.2d at 991 (¶ 14); M.R.A.P. 28.
A Whether the trial judge erred when he denied a jury instruction on nominal damages.
¶ 25. Melissa’s final issue argues that the trial judge erred when he refused to give a jury instruction on nominal damages. Melissa offered the following instruction:
*183 If you find that Chrissy Strickland is entitled to a verdict but do not find that Chrissy Strickland has sustained measurable damages, then you may return a verdict in a nominal sum such as one dollar ($1.00).
The trial court refused this instruction.
¶ 26. Melissa’s brief devotes three sentences to this issue and again cites no authority to support her argument. Thus, we are not obligated to review this issue on appeal. See Huff-Cook, Inc., 913 So.2d at 991 (¶ 14); M.R.A.P. 28.
¶ 27. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS AND BARNES, JJ., NOT PARTICIPATING.