792 So.2d 307 (2001)
Richard J. GORMAN, Appellant
v.
Charles Harry McMAHON, Jr., Appellee.
No. 1999-CA-01761-COA.
Court of Appeals of Mississippi.
April 10, 2001.
Rehearing Denied June 12, 2001.
Certiorari Denied August 16, 2001.
*309 Fred Mannino, Mary A. Nichols, Biloxi, for Appellant.
Michael C. Hester, Long Beach, for Appellee.
Before KING, P.J., BRIDGES and THOMAS, JJ.
BRIDGES, J., for the Court:
¶ 1. This is an appeal from the Circuit Court of Harrison County, Mississippi, First Judicial District, by Richard J. Gorman. On August 3, 1994, a complaint was filed by Charles Harry McMahon, Jr. against Gorman for alienation of affection, intentional infliction of emotional distress and negligent infliction of emotional distress. *310 In his complaint, Charles prayed to the court for both actual and punitive damages.
¶ 2. Before the trial in this matter, Gorman filed a motion seeking to limit Charles's damages to those damages that are traditional in a loss of consortium action. That motion was overruled and the court allowed proof of Charles's emotional and mental distress, loss of wages, medical expenses, divorce costs, attorneys fees and other expenses which he had incurred as a result of Gorman's relationship with Charles's wife, Louise. A two day jury trial was held in this matter and the jury found in favor of Charles and awarded him damages in the amount of $50,000. The jury did not award Charles any punitive damages. After this judgment was entered, Gorman filed this appeal before this court, citing the following issues:
1. Whether the jury's verdict was against the overwhelming weight of the evidence, thus necessitating reversal?
2. Whether the trial court improperly admitted evidence on the issue of damages which do not properly constitute damages for the loss of consortium thereby unfairly prejudicing the defendant?
3. Whether the trial court improperly struck two jurors "for cause?"
4. Whether the improper and deliberate inflammatory argument of plaintiff's counsel's closing argument at trial was unfairly prejudicial to the defendant thereby necessitating reversal?
5. Whether the cause of action for alienation of affection should be abolished?

FACTS
¶ 3. Charles and his wife, Louise, were married on May 26, 1984. This was the second marriage for Charles and the sixth marriage for Louise. In 1987, due to problems in their marriage, Louise moved out of their marital home and did not return for approximately three weeks. Louise again left the marital home in 1991 and, this time, did not return for roughly three months. Louise claims that she returned to the marital home on both occasions only because Charles had promised her that he would be "different." However, in September 1993, Louise was unhappy in their marriage and once more left Charles. Louise asked Charles for a divorce, although the parties dispute whether she did so in August or September of 1993. Louise made it very clear that she had no intention of again reconciling with Charles. Among the things which Louise cited as her reasons for asking Charles for a divorce were an unsatisfactory sex life, her claims that Charles practiced regular insurance fraud and the fact that she and Charles had no type of social life or loving relationship any longer. Louise stated that because of these things, she no longer had affection or respect for Charles and could not continue in the marriage.
¶ 4. On the other hand, Charles disputed these reasons given by Louise and insists that his marriage to Louise was indeed affectionate and that the two of them enjoyed socializing with friends on many occasions. Charles also denied that his sex life with Louise was suffering and he stated that the two of them went out together on occasions and even took a few trips together, one of which was a trip to Las Vegas shortly before their final separation in 1993. Charles even called witnesses at trial who testified that Charles and Louise appeared to be a very loving and affectionate couple. However, it is Louise's assertion that she had been unhappy in the marriage for some time before she left for good in 1993, and she stated that she did not feel affection for Charles as she had in the beginning of their marriage.
*311 ¶ 5. While still married to Charles, Louise began a romantic relationship with Gorman, a physician who had treated Louise's daughter for injuries she had previously sustained in a car accident. Louise and Gorman had an admitted sexual relationship with one another, and Gorman had rented an apartment for the two of them to meet for their encounters. Charles also alleges that Gorman bought Louise extravagant gifts while Charles and Louise were still married and that Gorman would make obscene gestures at him whenever the two men would cross paths. Charles also cites that only nine months after their divorce was final, Louise and Gorman adopted a child together, something that Charles and Louise were never able to do for financial reasons. Charles asserts that Gorman won Louise over with his money and luxurious lifestyle and that he simply could not compete for Louise's affections any longer.
¶ 6. Louise testified at trial that she, in fact, initiated the relationship with Gorman. Gorman and Louise both stated that Gorman was not receptive to her alleged advances at first and that Gorman even attempted to talk Louise into going back to Charles to try to make their marriage work. Louise asserts that she pursued the relationship with Gorman because she felt as if she had no husband and because she felt that she and Charles had no relationship anymore. Gorman denies Charles's allegations that he alienated Louise's affections and claims that he did absolutely nothing to interfere with Charles and Louise's marriage. Rather, it is Gorman's contention that Louise alone brought about any relations in which Gorman and Louise had engaged themselves. Further, Louise claims that Gorman could not have alienated her affections from her husband because, at the time that she began to pursue Gorman, she no longer had any affections or love for Charles.
¶ 7. A key point at trial involved the proper measure of damages for the tort of alienation of affection. Charles claims that he suffered from depression and that his work suffered because of Louise's affair and, as a result, his income decreased. Over the objection of Gorman, the trial court allowed Charles to put forth evidence of this emotional and mental distress and the related loss of wages, as well as proof of related medical bills, divorce costs, fees for private investigators, attorneys fees and the like. Gorman alleges that this was error on the part of the trial court because this evidence was not proper in an alienation of affection case. Gorman also alleges that two jurors were improperly struck "for cause" during voir dire. Further, Gorman claims to be aggrieved because it is his contention that Charles's counsel presented inflammatory arguments before the jury in his closing statement, intending to outrage the jury and divert their attention from the applicable law in this case. Gorman claims that these errors caused him to experience an unfair trial and caused the jury to wrongly find against him. Although Gorman has never denied his affair with Louise while she was still married to Charles, he asserts that he is not responsible for Louise's loss of affection for Charles because he did not initiate their relationship and because, as Louise testified, the marriage was essentially over when his affair with Louise began.
¶ 8. Citing his innocence and these errors on the part of the trial court, Gorman asks this Court to relieve him of the damages which the trial court ordered that he pay to Charles.

STANDARD OF REVIEW
¶ 9. The standard of review for jury verdicts dictates that this Court must not reverse a jury verdict unless the evidence *312 as a whole, taken in the light most favorable to the verdict, is such that no reasonable hypothetical juror could have found the same way. Snapp v. Harrison, 699 So.2d 567, 569 (Miss.1997); Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997); Junior Food Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss.1996); Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985).
If the facts are so overwhelmingly in favor of the appellant that reasonable and fair-minded jurors could not have arrived at a contrary verdict, then this Court must reverse and render.... On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Mississippi Transportation Commission v. SCI, Inc., 717 So.2d 332, 338 (Miss. 1998). See also Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 326 (Miss.1988).
¶ 10. A reviewing court such as this Court has a duty to defer to the trier of fact, i.e., the jury, in assessing the credibility of trial witnesses. Alldread v. Bailey, 626 So.2d 99, 102 (Miss.1993). A spouse who is seeking damages for loss of consortium has the burden of showing that he suffered those damages and is entitled to compensation. Id. A jury is free to believe or disbelieve the facts presented to it and to evaluate all witnesses and evidence to determine whether the complaining spouse was damaged in a loss of consortium action. Id. An appellate court must not disturb the jury's findings of fact and assessment of evidence if it can be found that there is substantial supporting evidence even if, on the same evidence, the appellate court would have found differently. Ciba-Geigy Corp. v. Murphree, 653 So.2d 857, 872 (Miss.1994). "The findings of fact [by the jury] may not be set aside unless manifestly wrong." Id.; Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss.1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 11. As the Mississippi Supreme Court held in City of Jackson v. Locklar:
We emphasize that our powers on appellate review are ... restricted. Our institutional role mandates substantial deference to the jury's findings of fact and to the trial judge's determination whether a jury issue was tendered.... We see the testimony the trial judge heard. We do not, however, observe the manner and demeanor of the witnesses. We do not smell the smoke of the battle. The trial judge's determination whether, under the standards articulated above, a jury issue has been presented, must per force be given great respect here.
City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss.1983). See also Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). As such, when reviewing the damages awarded to the appellant by the jury, we must leave those damages undisturbed unless we can look to the evidence and say that no rational jury could have, on the evidence put forth by the parties, assessed damages in that amount. Locklar, 431 So.2d at 481. We may not dismiss or reduce a damage award unless it is not supported by evidence or it is so out of line as to "shock the conscience of the Court." Id.; Anderson v. Jaeger, 317 So.2d 902, 907 (Miss.1975).

LEGAL ANALYSIS

1. Whether the jury's verdict was against the overwhelming weight of the evidence, thus necessitating reversal?
¶ 12. Keeping in line with our standard of review, we find that we cannot *313 reverse on this issue. We find that the limited situations in which this Court would be justified in overturning a jury verdict do not apply here. Gorman argues that he did not initiate the romantic relationship that he had with Louise and therefore contends that he is not responsible for the breakdown in her marriage with Charles. Gorman charges that Charles did not meet his burden of proving the elements of the tort of alienation of affection, which, under Mississippi law, include the following: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; (3) causal connection between such conduct and loss. Bland v. Hill, 735 So.2d 414, 417 (Miss.1999); Saunders v. Alford, 607 So.2d 1214, 1215 (Miss.1992). For Charles to succeed in his action for alienation of affection against Gorman, Charles has the burden of proving that there was a direct interference on Gorman's part sufficient enough to satisfy the jury that the alienation of Louise's affections was caused by Gorman. Bland, 735 So.2d at 419; Saunders, 607 So.2d at 1215; Kirk v. Koch, 607 So.2d 1220, 1222 (Miss. 1992); Stanton v. Cox, 162 Miss. 438, 139 So. 458, 460-61 (1932). Further, Charles must prove that Gorman's interference damaged his marriage to Louise. Bland, 735 So.2d at 419.
¶ 13. The jury in this case was evidently convinced that, were it not for Gorman, Charles could have attempted to save his marriage to Louise, as he had done before. We are convinced from the evidence in the record that, although Louise claims to have lost all affection for Charles before her affair with Gorman began, Charles was oblivious to how miserable Louise claimed to be. Furthermore, we take note of the fact that Louise is currently still in a relationship with Gorman and that the two of them have adopted a child together. It stands to reason therefore that Louise would protect the interests of Gorman in this action against him. Quite clearly, Gorman and Louise would like to move on with their new life together and their new child without the hassle of a lawsuit. Gorman argues that Louise had left Charles twice before in 1987 and 1991 and that this is evidence that she was unhappy in her marriage and had lost affection and love for Charles. We do not agree. We cannot ignore the fact that Louise did return to the marriage on both of those occasions and it is our opinion that the evidence of Louise's deliberate and voluntary reconciliations with Charles after these two short separations would tend to indicate that Louise wanted her marriage with Charles to work, contrary to her recent claims.
¶ 14. We have thoroughly reviewed the record in this case and the briefs of both parties in this case. Louise and Gorman both attempt repeatedly to convince this Court that Louise started the relationship with Gorman by seducing him. Louise and Gorman also both testified that Gorman made numerous efforts to persuade Louise to try to make her marriage to Charles work and that, it was only after her ceaseless, persistent advances toward him that he finally gave in to her and began an extra-marital affair. We find that this is of no relevance. The facts indicate to this Court that Gorman entered the picture and his actions served to transfer any affections that Louise harbored for Charles to Gorman. We also take note of the fact that Gorman presented Louise with very extravagant gifts, things that Charles could not afford to buy for her and, in our opinion, it would stand to reason that these gifts strengthened the lure and attraction that Louise had toward Gorman and eventually induced her into finally leaving Charles and asking him for a divorce. Even though Gorman did not initiate the relationship with Louise, the evidence shows that he certainly did interfere *314 with what Charles thought was a healthy marriage.
¶ 15. We find that any reasonable juror could have reached a decision in favor of Charles because the evidence shows that Charles proved: (1) Gorman's wrongful conduct in having an affair with the woman to which Charles was still married; (2) Charles lost Louise's affections, including loss of companionship, society, love and comfort, all of which are elements of the loss of consortium. Saunders, 607 So.2d at 1215; and (3) there was a causal connection between the affair had by Gorman and Louise and the loss of consortium suffered by Charles, no matter that Gorman did not "initiate" the relationship. As it is sometimes said, "it takes two to tango" and Gorman was evidently half of the affair which, in our opinion, ultimately caused Louise to leave Charles for good. Gorman has not shown that, without the affair he and Louise were carrying on, Louise would have still left Charles and asked him for a divorce. It is clear from the record that in the past when Louise had left Charles for whatever reason, she always went back to him. It is undoubtedly speculation that leads Gorman to argue that she would not have done the same here absent the affair and the luxuries lavished upon her by Gorman. Interestingly and, in our opinion, worth noting, it is also shown in the record of this case that Louise did not ask Charles for a divorce until after Gorman separated from his own wife. Even if Louise did launch this affair all on her own, we are convinced that this information alone does not prove that she had already lost all affection and love for Charles. In fact, the jury, who watched and listened to the testimony of Louise personally, was likewise not convinced.
¶ 16. The facts show that Charles was still Louise's husband at the time her affair with Gorman began, something that both Louise and Gorman appear to ignore in this matter. She continued to live in the marital household with Charles as his wife during the early stages of her extramarital affair with Gorman, continuing all of her spousal activities including doing Charles's laundry, taking care of Charles, cooking for Charles and paying half of the marital bills, to name a few. We are not convinced that Louise had, at this time, lost all feelings for the man to whom she was still married and continuing to attend to so readily.
¶ 17. We conclude that the jury's verdict in favor of Charles was not against the overwhelming weight of the evidence and that any reasonable juror could have found in favor of Charles in his alienation of affection claim. Furthermore, we believe that Charles proved the elements of alienation of affection and loss of consortium entitling him to compensation for such losses. On this issue, we affirm.

2. Whether the trial court improperly admitted evidence on the issue of damages which do not properly constitute damages for the loss of consortium thereby unfairly prejudicing the defendant?
¶ 18. Gorman argues that Charles should not have been allowed to present evidence of his medical expenses, attorneys fees and fees for private investigators because these are not elements of damages to be considered in a loss of consortium case. Gorman argues also that Charles should not have been allowed to argue for punitive damages in such an action. Gorman cites error on the part of the trial judge in allowing the jury to hear such evidence and asks us to reverse. First, we note that there is no Mississippi case law providing that punitive or any other type of damages are completely prohibited in an alienation of affection or loss of consortium action. Secondly, we have observed from the record that, through *315 testimony and other evidence, Charles has sufficiently shown that these damages can be readily connected to this instant action against Gorman. Charles explicitly argues, and seems to prove, that he suffered both physical and psychological problems caused by his reaction to Louise's affair with Gorman and Louise and Charles's looming divorce because of that affair. As well, Charles has shown that he hired private investigators to observe Gorman and Louise after learning of their affair to verify that it was indeed taking place. We find that Charles has additionally shown that the divorce was ultimately caused by Louise's shifting affections from Charles to Gorman and therefore, we see no reason why Charles should not recover the attorneys' fees he incurred in the divorce action. It certainly appears that, but for the extramarital affair between Louise and Gorman, the divorce may very well not have ensued.
¶ 19. In analyzing Gorman's argument that there are, however, limitations on damages in an alienation of affection action, we look to Tribble v. Gregory, a case that was cited by both parties to this case. Tribble v. Gregory, 288 So.2d 13 (Miss. 1974). The court in Tribble attempted to define the scope and limitations of damages recoverable in an alienation of affection/loss of consortium action. Id. at 16. The Mississippi Supreme Court ruled that the purpose of putting a limitation on damages in these types of actions is to prevent a double recovery situation. Id. at 16-17. In other words, when a plaintiff spouse claims loss of consortium against the defendant who caused injury to the other spouse, thereby creating the loss, the plaintiff spouse may not recover damages which the injured spouse may also claim in a separate civil suit against that same defendant. Id. Undoubtedly, we do not have that situation here. It is clear that Louise is not going to sue Gorman for injuring Charles. Therefore, the double recovery that the court in Tribble seeks to avoid is not a possibility in the instant case. Additionally, Gorman's argument against punitive damages would appear to be moot as the jury elected not to award any punitive damages to Charles even though there appears to be no law that would prohibit such an award. Further, Charles has not filed a cross-appeal in this case seeking any such relief.
¶ 20. "Consortium does not consist alone of intangible mental and emotional elements, but may include services performed by [one spouse] for [the other spouse] which have monetary value." Id. at 17. Charles not only lost the love and affection of Louise to Gorman, but he lost her services such as cooking his meals, cleaning their home, taking care of most all of Charles's needs, paying half of the household bills, all services that Louise regularly performed for Charles. Furthermore, the evidence shows that Louise did all of these things for Charles on a daily basis without ever complaining to Charles that she was unhappy, therefore keeping him oblivious to her "misery." As such, these were all services which Charles had come to expect from Louise as a part of their marriage and may be calculated into Charles's monetary award for his loss.
¶ 21. This Court is unable to find any authority that would prohibit Charles from recovering for additional losses caused by the alienation of Louise's affections by Gorman. Gorman has failed to show this Court that recoverable damages in an alienation of affection case are limited to damages for loss of consortium alone. As stated in Tribble, every case is not limited to damages for loss of conjugal rights only, but "[t]he proof in each case will determine the elements of damages to be submitted to the jury for its consideration." Id. We *316 find that this opens the door for allowing certain other types of damages to be argued in an alienation of affection case. Here, Charles testified that he suffered from depression and physical problems, leading to medical expenses and loss of income, due to his discovery of Louise's affair with Gorman. Additionally, Charles submitted expenses for private investigators and fees for his divorce attorney, both also a result of the illicit affair had by Louise and Gorman.
¶ 22. We find that Charles was entitled to present evidence of these types of damages because the evidence in the record shows that these losses by Charles were caused directly by the alienation of Louise's affections by Gorman. Therefore, this evidence goes directly to the issue of causation, the third prong of proof in alienation of affection actions. Bland, 735 So.2d at 417; Saunders, 607 So.2d at 1215. See Orr v. Sasseman, 239 F.2d 182, 185 (5th Cir.1956). Further, these damages are "actual" damages, which are defined as follows: "Compensation for actual injuries or loss ... actual damages flowing from injury ... [which] are to be distinguished from damages which are nominal, exemplary or punitive ... [a]ctual damages are synonymous with compensatory damages." BLACK'S LAW DICTIONARY 35 (6th Ed.1990). The United States Fifth Circuit Court of Appeals ruled that:
Evidence is admissible, in an action for alienation of affections ... to show the motives, feelings, emotions, and relations of the parties with respect to the loss of affection or consortium or the desertion of the plaintiff by his or her spouse, and a wide latitude is exercised by the courts in admitting evidence for such purpose, which ordinarily might be subject to the objection against hearsay evidence and self-serving declarations.
Orr, 239 F.2d at 185. We are convinced that there was nothing to prohibit the trial court from hearing evidence of such damages.
¶ 23. Because we do not now know, nor will we ever know, how the jury arrived at such a verdict of $50,000 in favor of Charles, we cannot render a decision on whether the verdict itself was appropriate. We are not in possession of any information which would show us what evidence the jury took into consideration when coming up with such a figure. Inasmuch as we are not equipped with a means of probing into the jurors' heads, we cannot say that the $50,000 award in favor of Charles is out of line with the evidence presented to them because we do not know their reasoning for such a verdict. Anderson, 317 So.2d at 907. What we do know is that, had their reasoning included these expenses submitted by Charles, it would not have been improper.

3. Whether the trial court improperly struck two jurors "for cause?"
¶ 24. We find that there is no merit to this argument. "A juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or impartiality at trial." Berry v. State, 703 So.2d 269 (¶ 85) (Miss.1997). The two jurors at issue here were clearly removed because they had preconceived notions on alienation of affection actions and, as human nature dictates, we cannot ignore certain biases simply because someone tells us to do so. One of the arguments by counsel for Gorman at trial was that the tort of alienation of affection should be abolished. These two jurors at issue directly stated that they did not believe that there should be actions for alienation of affection in existence. Clearly, this presents a potential bias in favor of Gorman. While the comments of these two jurors *317 did not decisively indicate that they would have been partial in the trial of this matter, and even though they both subsequently stated that they could be fair, there was plainly the existing possibility that their preconceptions could cause an unfair advantage in favor of Gorman if they were to be impaneled for trial.
¶ 25. "A trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause." Poe v. State, 739 So.2d 405 (¶ 14) (Miss.Ct.App.1999). The Mississippi Supreme Court held that the trial judge is in the best position to assess whether a juror should be excluded for cause because he hears and sees each individual juror. Williamson v. State, 512 So.2d 868, 881 (Miss.1987). As such, it has been established that "the determination of whether a juror is fair and impartial is a judicial question, and will not be set aside unless such determination is clearly wrong." Taylor v. State, 672 So.2d 1246, 1264 (Miss.1996). Only when this Court finds an abuse of discretion on the part of the trial judge in excusing a juror for cause may we find error. Avera v. State, 761 So.2d 900 (¶ 19) (Miss.Ct.App.2000). Because we cannot say that the trial judge was definitely mistaken in his perceptions of these jurors and that his decision to excuse these jurors for cause was not entirely groundless, we cannot reverse on this issue. We find that the trial judge did not abuse his discretion here and therefore we affirm his decision on this issue.

4. Whether the improper and deliberate inflammatory argument of plaintiffs counsel's closing argument at trial was unfairly prejudicial to the defendant thereby necessitating reversal?
¶ 26. Charles points out that Gorman's counsel did not preserve this issue for appeal by making a noted objection to the comments at issue during Charles's counsel's closing argument. As such, this issue must be waived on appeal and no error can be found by this Court as long as the statements made by counsel for Charles were not so prejudicial as to deny Gorman the right to a fair trial. Radcliff v. State, 736 So.2d 1081(¶ 4) (Miss. Ct.App.1999). In the following analysis, we advance our reasoning for adjudging that the statements were not so detrimental as to result in an unfair trial, thereby effecting a waiver of this issue.
¶ 27. At issue are the statements made to the jury by Charles's counsel analogizing this case to that of cases long ago where the remedy for alienation of affection or adultery would be that the defendant would be tied to a whipping post and the plaintiff spouse would be given the whip to serve punishment upon the offender as he so desired. Gorman asserts that absolutely the only reason that Charles's counsel made these remarks before the jury was to enrage them and play on their emotions, touching their moral nerves, so to speak. Mississippi case law provides that while an attorney is limited in the type of language and statements that he makes when addressing a jury, the comments would serve to be an abuse of privilege either if they had been for the sole purpose of inducing beliefs into the jurors, exciting their passions or prejudices, or because the attorney made a misstatement of the law or argued facts not in evidence. Dykes v. State Highway Commission of Mississippi, 535 So.2d 1349, 1353 (Miss. 1989); Howell v. State, 411 So.2d 772, 776 (Miss.1982); Mississippi State Highway Commission v. Hall, 252 Miss. 863, 876, 174 So.2d 488, 493 (1965).
¶ 28. The question before this Court is whether Charles's attorney's statements to the jury regarding the whipping post analogy constituted tactics which would prove *318 to be highly inflammatory and prejudicial for the jury to hear. Howell, 411 So.2d at 776. Gorman avows that he was denied a fair trial because of these statements. We disagree. The jury in this matter had gone through the entire trial hearing about Louise and Gorman's extra-marital affair and Charles's emotional breakdown following his discovery of the affair. It is doubtful that the morality issues of this case only occurred to the jury when counsel made these statements in his closing argument. It is arguable also that a discussion of the whipping posts of the olden days excited negative passion into the jurors about Gorman that did not already exist at that point. In our opinion, counsel's closing statement here was an acceptable argument used to inject an awareness of the effects that an extra-marital affair can have on the offended spouse. However, we are not convinced that it was so inflammatory as to play on the jury's emotions any more than is permitted. Presumably, the jurors' emotions had already been tapped when Charles was discussing his depression and Louise was describing how she unabashedly seduced Gorman while she was still married to Charles.
¶ 29. The requirement of an attorney who is speaking to the jury at any time during the trial is that he does not confuse the jury, confuse the issues, misstate the law or inflame the jury. Howell, 411 So.2d at 776. The attorney must stick to the issues within the evidence presented. Id. Here, we are not persuaded that the analogy of the whipping post would serve to confuse the jury or the issues. It is within the trial judge's discretion to limit the liberty of counsel, but the judge must be careful in restraining counsel more than necessary. Id. Counsel's "illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination." Id. We are convinced that this is exactly what Charles's counsel was doing here. Ergo, in addition to our finding that this issue possesses no merit, we conclude that it was waived for appeal by Gorman's counsel and is thus procedurally barred.

5. Whether the cause of action for alienation of affection should be abolished?
¶ 30. Gorman is asking this Court to address a question that the Mississippi Supreme Court has previously answered. Bland, 735 So.2d at 417-18. In Bland, the court expressed its reasons for sustaining the action of alienation of affection and answered the question of whether it should be abolished in the negative. Id. The court provided that "[t]he purpose of a cause of action for alienation of affection is the `protection of the love, society, companionship, and comfort that form the foundation of a marriage....'" Id. at 417 (quoting Saunders, 607 So.2d at 1215). The court was very clear that we must preserve the essence of marriage by protecting these affections through our judicial system. Id. at 418. A spouse is entitled to all of those affections as well as "the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home.... The loss of consortium is the loss of any or all of these rights...." Id. (citing Kirk, 607 So.2d at 1224).
¶ 31. It is clear that Louise provided all of these things to Charles during their marriage and she took all of these steps to make a home with Charles. As the evidence in the record seems to point out, Louise's affair with Gorman appeared to end these comforts. Therefore, we find that Charles is entitled to compensation for his losses. This Court would be remiss *319 in eliminating the tort of alienation of affection as Gorman requests when it has been declared by the Mississippi Supreme Court only recently that "abolish[ing] the tort of alienation of affections would, in essence, send the message that we are devaluing the marriage relationship." Bland, 735 So.2d at 418. Therefore, this issue is dismissed for lack of merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS HEREBY AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., PAYNE, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.
McMILLIN, C.J., concurs in result only.