KING, C.J.,
 

 for the Court:
 

 ¶ 1. Alice Vanlandingham filed a complaint alleging medical malpractice against Dr. Gregory Patton and Oxford Obstetrics and Gynecology (Oxford OB/GYN). The matter proceeded to trial, and the jury returned a verdict in favor of Dr. Patton and Oxford OB/GYN. After the denial of her post-trial motions, Vanlandingham filed this appeal, raising two issues for this Court’s review:
 

 I. Whether the trial court erred by not excusing juror 27 and juror 26 for cause; and
 

 II. Whether the trial court erred by admitting the testimony of Dr. Steven Stain.
 

 Finding no error, we affirm the jury’s verdict.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Vanlandingham suffered from chronic pelvic pain. In early 2003, she was referred to Dr. Patton, an OB/GYN affiliated with Oxford OB/GYN, for treatment. The treatment proved unsuccessful in alleviating Vanlandingham’s pelvic pain. Thus, on June 23, 2003, Vanlandingham elected to have surgery to remove her left ovary in hopes that it would alleviate her pain.
 

 ¶ 3. Dr. Patton performed an exploratory laparotomy, a bilateral salpingo-oopho-rectomy, and lysis of adhesions on Van-landingham. During the surgery, Dr. Patton found deep adhesions caused by prior surgeries on Vanlandingham’s ovary and the wall of her sigmoid colon, which caused the two organs to stick together. Dr. Patton removed these adhesions, and this removal caused abrasions on the outer wall of Vanlandingham’s colon.
 

 ¶ 4. Vanlandingham remained in the hospital for several days after her surgery. She was discharged on June 27, 2003. That same night, Vanlandingham became very ill and experienced continuing pain in her pelvic area. Vanlandingham returned to the hospital and sought treatment in the emergency room. An examination revealed that Vanlandingham’s colon had perforated, causing peritonitis and sepsis.
 

 ¶ 5. On August 30, 2004, Vanlandingham filed a lawsuit against Dr. Patton and Oxford OB/GYN, alleging medical malpractice. Specifically, Vanlandingham argued that Dr. Patton erred by not placing sutures, or stitches, at the area of the injury, which she claims would have prevented the
 
 *1244
 
 perforation of her colon. She also claimed that Dr. Patton admitted to her family that he “nicked” her colon during surgery and that the resulting perforation was his fault.
 

 I. Voir Dire
 

 ¶ 6. The trial commenced in August 2008. During voir dire, Vanlandingham challenged Thomas Guest, juror 27, and Lisa Daniels, juror 26, for cause. Guest stated that he was a realtor and that he had done business with Dr. Glenn Hunt, who is Dr. Patton’s business partner. Guest felt as if it would cost him some business if he ruled against Dr. Patton. Nevertheless, Guest pledged that he could be fair and impartial in spite of this.
 

 ¶ 7. Daniels stated that she was employed part-time at an internal medicine clinic that referred patients to Dr. Patton. Daniels stated that Dr. Patton also referred patients to her employer. However, Daniels stated that she had no direct contact with Dr. Patton or his clients. Daniels also pledged that she could be fair and impartial in her decision-making.
 

 ¶ 8. The trial court denied Vanlanding-ham’s challenges for cause against both jurors. Vanlandingham successfully exercised a peremptory strike against Guest. Thus, he did not serve on the jury. However, Vanlandingham did not exercise a peremptory strike against Daniels, and she served on the jury.
 

 II. Expert Testimony
 

 A. Dr. Earnest Kleier
 

 ¶ 9. During the trial, Vanlandingham produced one expert witness — Dr. Earnest Kleier, a general surgeon. Dr. Kleier agreed that the surgery Dr. Patton performed was appropriate treatment for Vanlandingham’s chronic pelvic pain. However, Dr. Kleier opined that Dr. Patton fell below the standard of care because there was an injury to the sigmoid colon that he did riot repair, which caused the colon to perforate.
 

 ¶ 10. Dr. Kleier testified that the colon has three layers: the serosa, which is the outermost layer; the muscularis, which is the muscular wall of the tract; and the mucosa, which is the innermost layer. Dr. Kleier testified that generally, the standard of care does not require a surgeon to repair an abrasion to the serosa. However, the standard of care does require a physician to repair an injury that reached the muscularis or mucosa.
 

 ¶ 11. Based on the extent of Vanland-ingham’s injury, Dr. Kleier opined that Dr. Patton must have lacerated the muscularis of her colon during surgery, causing a partial thickness injury. Dr. Kleier stated that this injury caused the colon to perforate a few days later. Dr. Kleier testified that Dr. Patton should have inspected the area before completing the surgery, and his operative notes failed to denote such. If Dr. Patton had examined the area, Dr. Kleier opined that he would have seen the injury, and the standard of care would have required him to repair it. Basing his opinion on a reasonable medical probability, Dr. Kleier stated that Vanlandingham’s colon would not have perforated if the injury had been repaired.
 

 B. Dr. Steven Stain
 

 1112.
 
 For the
 
 defense, Dr. Patton testified as to his treatment of Vanlandingham. Additionally, Dr. Patton and Oxford OB/ GYN produced two other expert witnesses — (1) Dr. Steven Stain, an expert in surgery, including abdominal surgery and post-operative care of patients, and (2) Dr. Mark Reed, an expert in obstetrics and gynecology and in the subspecialty of gynecological oncology and surgery.
 

 ¶ 13. Dr. Stain agreed to state his medical opinions within a reasonable degree of medical certainty or probability. During
 
 *1245
 
 his direct examination, Dr. Stain testified that it is unusual for him to state in his operative notes that he inspected the colon unless he was treating a colon injury. He testified that it is usual to see serosal injuries when dissecting an ovary from the colon wall. Dr. Stain testified that repairing an injury is a judgment call made by the physician. However, based on standard practice, Dr. Stain testified that a simple serosal injury need not be repaired. Conversely, he stated that an injury that results in out pouching, which is where the mucosa sticks through the defect in the serosa, should be repaired.
 

 ¶ 14. Dr. Stain testified that it would be hard for Dr. Patton to miss such an injury because the surgery was conducted in a very small area. Based on his review of Dr. Patton’s operative notes, Dr. Stain testified that there was no bleeding, and there was no mention of out pouching. Thus, applying the standard of care, Dr. Stain testified that he did not see anything in the operative notes that would have required further surgical intervention. Based on a reasonable degree of medical certainty, Dr. Stain opined that the injury to the colon was a serosal injury that later progressed to a perforation. Thus, Dr. Stain testified that Dr. Patton complied with the standard of care when he did not repair the serosal abrasion.
 

 ¶ 15. At one point during cross-examination, Dr. Stain was asked whether the standard of care required a surgeon to repair a serosal injury that had out pouching. Dr. Stain responded that he did not know what the standard of care would require in that instance, but he explained that he generally repairs injuries that result in out pouching. Dr. Stain was also questioned about a statement he made in his 2006 deposition. In 2006, Dr. Stain gave four possibilities regarding what could have caused Vanlandingham’s injury. At trial, he only offered one of those possibilities — that the cause of her perforated colon was a serosal injury. Dr. Stain explained that in 2006, he could not state with fifty-one-percent certainty which situation occurred, which is the definition opposing counsel gave him. However, at the time of trial, Dr. Stain stated that he had a better understanding of the definition of “reasonable medical certainty,” and his opinion was based on what was the most probable cause of Vanlandingham’s injury.
 

 C. Dr. Mark Reed
 

 ¶ 16. Based on Dr. Patton’s operative notes, Dr. Reed opined that Dr. Patton made thoughtful decisions regarding his approach to Vanlandingham’s surgery, and Dr. Patton complied with the standard of care. Dr. Reed testified that as a general rule, he does not say in his operative notes that he inspected the colon, and this does not violate the standard of care. Dr. Reed also stated that the area of the surgery is so small that the surgeon cannot help but inspect the area.
 

 ¶ 17. Dr. Reed testified that if any organ sustains significant damage, there will be bleeding. Based on Dr. Patton’s operative notes, Dr. Reed testified that Dr. Patton irrigated the area, and there was no documentation of unusual bleeding. The operative notes also showed that Dr. Patton lined Vanlandingham’s organs with in-terceed, a tissue-like fabric used to separate organs and prevent the formation of adhesions. Dr. Reed testified that the in-terceed would have dissolved if there were any fluid between her organs.
 

 ¶ 18. Dr. Reed also testified that based on the standard of care, a serosal abrasion need not be repaired. However, he testified that injuries involving the muscularis or mucosa should be repaired. Dr. Reed testified that if Dr. Patton had injured the muscularis, the wound would have pouched out, and Dr. Patton would have seen it.
 
 *1246
 
 Dr. Reed also testified that if a patient has sustained such an injury, peritonitis would have onset within twenty-four to forty-eight hours. Based on a reasonable degree of medical probability, Dr. Reed testified that there was no evidence of a significant injury to the colon that would have required repair.
 

 D. Dr. Gregory Patton
 

 ¶ 19. Dr. Patton admitted that while removing Vanlandingham’s adhesions, there was some abrasion caused to her colon wall. Dr. Patton testified that it was impossible to remove dense adhesions without some abrasion occurring. He explained that he did not state in his operative notes that the colon was abraded because it was general knowledge among surgeons that the removal of adhesions may cause abrasion.
 

 ¶ 20. Dr. Patton agreed that Vanland-ingham’s peritonitis developed from a perforation in her colon. However, Dr. Patton testified that Vanlandingham’s injury was a simple abrasion, and typically, superficial abrasions heal and are not prone to perforate. Dr. Patton testified that he carefully inspected the area and irrigated the area three times. He stated that he did not see any out pouching, bleeding, or leakage from the colon.
 

 ¶ 21. Dr. Patton testified that if Van-landingham had sustained such an injury, they would have seen signs of peritonitis within twenty-four hours of the injury. Dr. Patton testified that Vanlandingham was in the hospital for five days following her surgery, and there was no evidence of peritonitis prior to her discharge.
 

 III. Verdict
 

 ¶ 22. The jury returned a verdict in favor of the defendants, and the trial court entered a judgment on August 28, 2008, to that effect. Thereafter, Vanlandingham filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. Aggrieved, Vanlandingham timely filed her notice of appeal.
 

 ANALYSIS
 

 I. Jurors
 

 ¶ 23. Vanlandingham argues that the trial court erred by denying her challenge for cause to Guest and Daniels, arguing that the jurors had a financial interest in the outcome of the litigation. Conversely, Dr. Patton and Oxford OB/GYN argue that the trial court did not err because there was no evidence that either juror had any financial interest in the outcome of the case, and there was no question regarding the jurors’ abilities to render a fair and impartial verdict.
 

 ¶ 24. “A juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or impartiality at trial.”
 
 Gorman v. McMahon,
 
 792 So.2d 307, 316 (¶ 24) (Miss.Ct.App.2001) (quoting
 
 Berry v. State,
 
 703 So.2d 269, 292 (¶ 85) (Miss.1997)). The trial court sits in the best position to determine whether a juror should be excluded; thus, “[the] trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause.”
 
 Id.
 
 at 317 (¶ 25) (quoting
 
 Poe v. State,
 
 739 So.2d 405, 409 (¶ 14) (Miss.Ct.App.1999)). Accordingly, absent a finding of abuse of discretion, this Court will not disturb a trial court’s decision regarding whether to strike a juror for cause.
 
 Id.
 

 A. Thomas Guest
 

 ¶ 25. During voir dire, Vanland-ingham’s trial counsel questioned Guest as to the following:
 

 
 *1247
 
 Q: Okay. Dr. Glen Hunt. Any of you know Dr. Hunt?
 

 A: Tom Guest, number 27. I am in the real estate business and I have done business with Dr. Hunt.
 

 Q. Would that relationship with Dr. Hunt[,] if you had to find against Dr. Patton in this case, would you feel like if you saw him you would have to explain why you did what you did?
 

 A: I feel like I could be fair but I feel like it would cost[s] me some business in the future if I ruled against him but I feel like I could be fair.
 

 Based on this exchange, Vanlandingham’s trial counsel challenged Guest for cause, stating that he was biased because of his financial interest in the outcome of the case. The trial court overruled the challenge. Later, Vanlandingham successfully exercised a peremptory challenge against Guest.
 

 ¶ 26. When determining whether a potential juror can be impartial, the trial court considers the “factor or circumstance which tends to indicate a potential for bias on the part of that juror and secondly the juror’s promise that he or she can and will be impartial.”
 
 Smith v. Parkerson Lumber, Inc.,
 
 888 So.2d 1197, 1205 (¶ 26) (Miss.Ct.App.2004). In response to Vanlanding-ham’s challenge, the trial court stated: “The way I understand the gentleman was he said I[am] going to be fair even if it eost[s] me some business.” Additionally, Guest stated under oath that he could and would be fair and impartial in rendering his decision. Based on the foregoing, we cannot find that the trial court abused its discretion in denying Vanlandingham’s challenge for cause against Guest.
 

 ¶ 27. Although Guest did not serve on the jury, Vanlandingham complains that she should not have been forced to use a peremptory strike against him. However, Vanlandingham has failed to show how her trial was unfair because she had to use a peremptory strike against Guest.
 
 See id.
 
 at 1205 (¶ 27). Thus, we find that this issue is without merit.
 

 B. Lisa Daniels
 

 ¶28. During voir dire, Daniels stated that she worked part-time at an internal medicine clinic. Her employer referred patients to Dr. Patton, and Dr. Patton referred patients to her employer. However, Daniels stated that she did not have any direct contact with Dr. Patton or his clients. Daniels stated under oath that she could be fair and impartial in rendering her decision. Vanlandingham’s trial counsel challenged Daniels for cause, arguing that she could not be fair and impartial because she had an “indirect financial interest” in the outcome of the case. The trial court overruled the challenge.
 

 ¶ 29. Vanlandingham had four peremptory strikes. One peremptory strike was used against Guest. The remaining peremptory strikes were used against jurors whom Vanlandingham did not challenge for cause. Vanlandingham did not use a peremptory strike against Daniels, and Daniels served on the jury.
 

 ¶ 30. As previously mentioned, the trial court sits in the best position to determine a potential juror’s impartiality “because he hears and sees each individual juror.”
 
 Gorman,
 
 792 So.2d at 317 (¶ 25) (citation omitted). Within its discretion, the trial court determined that Daniels’s part-time employment with the internal medicine clinic would not affect her impartiality at trial. Daniels stated under oath that she could be fair and impartial in the case. “[I]t is a generally accepted principle that ‘jurors take their oaths and responsibilities seriously, and when a prospective juror assures the [trial] court that, despite the circumstance that raises some question as to [her] qualification, this will not affect
 
 *1248
 
 [her] verdict, this promise is entitled to considerable deference.’ ”
 
 Haggerty v. Foster,
 
 838 So.2d 948, 957 (¶ 21) (Miss.2002) (quoting
 
 Scott v. Ball,
 
 595 So.2d 848, 850 (Miss.1992)). Based upon our review of the record, we have seen nothing to call the trial court’s decision into question. This argument is without merit.
 

 II. Dr. Steven Stain’s Testimony
 

 ¶ 31. Vanlandingham argues that the trial court erred by denying her motion to strike Dr. Stain’s testimony. Specifically, Vanlandingham argues that Dr. Stain’s medical opinions were not based upon a reasonable medical probability, and Dr. Stain failed to articulate the applicable standard of care. Conversely, Dr. Patton and Oxford OB/GYN argue that Vanland-ingham failed to object to Dr. Stain’s testimony until well into direct examination, and Vanlandingham did not move to limit Dr. Stain’s testimony until after the jury had heard his testimony in its entirety. Additionally, they assert that Dr. Stain stated his medical opinions to a reasonable degree of medical certainty, and Dr. Stain articulated the applicable standard of care.
 

 ¶ 32. The Court must note that the plaintiff bears the burden of proof in a case of medical malpractice.
 
 Griffin v. McKenney,
 
 877 So.2d 425, 446 (¶ 75) (Miss.Ct.App.2003) (citing
 
 McCaffrey v. Puckett,
 
 784 So.2d 197, 206 (¶ 33) (Miss.2001)). Mississippi has adopted the standards set forth in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) to determine the admissibility of expert testimony.
 
 See Walker v. Gann,
 
 955 So.2d 920, 930 (¶ 31) (Miss.Ct.App.2007). The
 
 Daubert
 
 test consists of a two-prong inquiry: (1) the trial court must establish whether the expert testimony is relevant, meaning that it will aid the fact-finder; and (2) the trial court must determine whether the expert testimony is reliable.
 
 Id.
 
 The admissibility of expert testimony lies within the sound discretion of the trial court.
 
 Causey v. Sanders,
 
 998 So.2d 393, 399 (¶ 14) (Miss.2008). Thus, this Court will not disturb the trial court’s ruling absent a finding of abuse of discretion.
 
 Id.
 

 ¶ 33. As previously mentioned, Dr. Stain testified that, based on his review of Dr. Patton’s operative notes, Vanlanding-ham’s injury was a serosal injury that later progressed to a perforation. Dr. Stain testified that based on standard practices, a simple serosal injury does not require repair. However, Dr. Stain testified that an injury that has out pouching, where the mucosa is exposed, should be repaired. Because the injury was to the serosa, Dr. Stain stated that Dr. Patton complied with the standard of care when he did not repair the abrasion.
 

 ¶ 34. Vanlandingham does not argue that Dr. Stain’s testimony was irrelevant. She also does not question whether Dr. Stain was qualified to testify as an expert. Vanlandingham complains that Dr. Stain did not state his opinions within a reasonable degree of medical certainty or probability, using terms such as “my guess” and “I do not know.” Vanlandingham made a motion to exclude Dr. Stain’s testimony after Dr. Stain had testified before the jury. In ruling on the motion, the trial court found that Dr. Stain understood the standard of care and denied the motion.
 

 ¶ 35. It is true that Dr. Stain used such terms as “my guess” during his testimony. For instance, Dr. Stain stated the following during his direct examination:
 

 A: I think my guess is it was a serosal injury.
 

 PLAINTIFF[’S] [COUNSEL]: Objection, Your Honor, my guess is.
 

 COURT: Sustained.
 

 
 *1249
 
 DEFENSE [COUNSEL]: Remember Dr. Stain, we indicated earlier that you express opinions only if you held them to a reasonable degree of medical probability and not as a mere possibility....
 

 [[Image here]]
 

 A: I’m sorry for using the term guess, I believe certainly a probability [sic] that the most likely thing that happened in the patient was there was a serosal injury which progressed in her postoperative period to a perforation which is what caused her peritonitis[,] and I think in answer to your specific question[,] I think the things that were done from reading the operative note, reading the post-operative progress notes that Dr. Patton complied with the standard of care.
 

 Vanlandingham points out other excerpts of Dr. Stain’s testimony that she believes shows that he did not state his medical opinions within a reasonable degree of medical certainty. In most instances, Van-landingham’s trial counsel objected to a statement made by Dr. Stain, and the trial court sustained the objection, directing Dr. Stain to state his opinion within a reasonable degree of medical certainty or probability. After which, Dr. Stain complied.
 

 ¶ 36. As another example, Vanlanding-ham’s trial counsel questioned Dr. Stain on cross-examination regarding whether the standard of care required a physician to repair a serosal injury that had out pouching. Dr. Stain used the phrases, “I do not know” and “I am not sure,” when answering the question. However, Dr. Stain explained that, while serosal injuries are generally not repaired, he would repair an injury to the colon if it resulted in out pouching. This testimony is in accordance with the testimony Dr. Stain gave during direct examination.
 

 ¶ 87. Dr. Stain did not always use the magic words “within a reasonable degree of medical certainty or probability” during his testimony. However, Dr. Stain stated under oath from the very beginning of his testimony that he would state his medical opinion based on a reasonable degree of medical certainty or probability. Despite those few instances previously mentioned, he did so. The supreme court has held that there is no requirement that an expert use magical language in his testimony, “as long as the import of the testimony is apparent.”
 
 West v. Sanders Clinic for Women, P.A.,
 
 661 So.2d 714, 720 (Miss.1995). Viewing Dr. Stain’s testimony as a whole, we find that the import of his testimony was apparent; he articulated the applicable standard of care; and he sufficiently stated his medical opinions within a reasonable degree of medical certainty or probability.
 

 ¶ 38. Vanlandingham also complains that during Dr. Stain’s 2006 deposition, he gave four possibilities regarding what went wrong in Vanlandingham’s surgery. However, at trial, he listed one possibility— that she suffered from a serosal abrasion of the colon. The trial court informed trial counsel that the issue was a question for cross-examination, and trial counsel pursued the line of questioning on cross-examination. This matter clearly goes to Dr. Stain’s credibility, which was a matter for the jury to decide, and has no bearing on whether Dr. Stain’s testimony should have been admitted.
 
 See Kent v. Baptist Mem’l Hosp. N. Miss.,
 
 853 So.2d 873, 883 (¶ 38) (Miss.Ct.App.2003) (finding that “the jury is the ultimate judge of the weight of the evidence and the credibility of the witnesses”).
 

 ¶ 39. Based on the foregoing, we find that the trial court did not err by admitting Dr. Stain’s testimony. This argument is without merit.
 

 
 *1250
 
 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.