ISHEE, J.,
dissenting:
¶ 16. I respectfully dissent with the majority on the issue of causation as to whether Martin offered sufficient testimony to create a question of fact upon which reasonable minds could differ. I also dissent with the majority’s discussion of breach of duty — an issue that was not raised by either party on appeal.
¶ 17. First, I find that Martin’s medical expert, Dr. Gandy, did not provide sufficient evidence for a jury to determine that Martin’s injuries were proximately caused by her fall at St. Dominic. The hospital argues, and I agree, that Martin failed to provide any expert testimony to prove causation and that the trial court did not misapply any case law in reaching its decision.
¶ 18. The basis of the trial court’s decision focused on the causation element. Proximate cause contains two elements: (1) cause in fact and (2) legal cause. Kaigler v. City of Bay St. Louis, 12 So.3d 577, 583 (¶ 30) (Miss.Ct.App.2009) (citing Glover ex rel. Glover v. Jackson State Univ., 968 So.2d 1267, 1277 (¶31) (Miss.2007)). In this case, the trial court’s ruling focused on the cause-in-fact element, which means that the injury would not have occurred but for the defendant’s negligence. Id.
¶ 19. St. Dominic contends that Dr. Gandy did not testify to a reasonable degree of medical certainty whether Martin’s *75 knee injuries were caused by her fall. Yet Martin insists that Dr. Gandy’s statement that the injuries were caused by wear and tear or an acute injury was sufficient. After reviewing the record, I find that Dr. Gandy’s testimony was too speculative for a jury to find causation for the injury.
¶ 20. There are no magic words necessary to establish proximate cause, but the expert’s opinion must be based on a reasonable degree of medical certainty. Vanlandingham v. Patton, 35 So.3d 1242, 1249 (¶ 37) (Miss.Ct.App.2010). In Vanlanding-ham, a medical-malpractice case, we found that although the testifying expert did not always use the terms “within a reasonable degree of medical certainty,” the import of his testimony was apparent. Id. In Kidd v. McRae’s Stores Partnership, 951 So.2d 622, 626 (¶ 19) (Miss.Ct.App.2007), another medical-malpractice case, this Court also stated the following:
[Wjhen an expert’s opinion is not based on a reasonable degree of medical certainty, or the opinion is articulated in a way that does not make the opinion probable, the jury cannot use the information to make a decision. Failure to properly qualify an expert opinion typically occurs in testimony that is speculative .... It is the intent of the law that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision.
(Internal citations and quotations omitted).
¶ 21. Dr. Gandy was unable to appear in court; thus, his videotaped deposition was admitted into evidence. As stated by Dr. Gandy, Dr. Meador referred Martin to him. During her initial visit, Martin complained of pain in both knees. When giving her medical history, Martin told Dr. Gandy that she had experienced pain in her left knee for two years, and she had only recently begun having pain in her right knee. She further told Dr. Gandy that she had also fallen at the hospital two months prior, sustaining direct blows to her knees.
¶ 22. Dr. Gandy reviewed the MRI that Dr. Meador had taken of Martin’s knees. According to Dr. Gandy, the MRI revealed that Martin had mild patella alta with evidence of a trabecular injury bruising to her left knee. Dr. Gandy explained that bruising of that type is normally caused by some type of blow to the knee. Dr. Gandy also stated that Martin had sustained a mild anterior cruciate ligament (ACL) sprain, joint effusion (fluid on the knee), and mild marrow edema (swelling) in her left knee. The MRI revealed that Martin’s right knee had moderate osteoarthritis. In his initial diagnosis, Dr. Gandy determined that Martin had internal derangement, which means that something is wrong inside the knee, but she primarily had arthritis in both knees.
¶ 23. Dr. Gandy gave Martin three options: (1) wear a knee brace, (2) receive cortisone injections, or (3) undergo an arthroscopic surgery. Martin elected to have the surgery. During the surgery, Dr. Gandy discovered that Martin had two meniscus tears in her left knee.
¶ 24. During the deposition, Martin’s trial counsel asked Dr. Gandy whether he had recommended the surgery because of the meniscus tears. Dr. Gandy said that was not the reason he had recommended the surgery; because until the surgery, he was unaware that Martin had meniscus tears due to the fact that they were not visible on Martin’s MRI. Dr. Gandy stated that he suggested the surgery to Martin to address her symptoms, and he did not know if those symptoms were due to her arthritis. Martin’s trial counsel also asked Dr. Gandy what caused the meniscus tears. Dr. Gandy responded that a meniscus tear could be caused by normal wear and tear or an acute injury.
*76 ¶ 25. As indicated by Dr. Gandy, the surgery was successful. Dr. Gandy testified that on December 28, 2005, he examined Martin and recommended physical therapy. However, Martin declined the physical therapy at that time. Dr. Gandy examined Martin again on March 22, 2006, and she complained of pain in her knee. As a result, Dr. Gandy administered cortisone injections to Martin’s knee. Dr. Gan-dy testified that because of Martin’s arthritis, he expected Martin to continue to experience pain.
¶ 26. On direct examination, Martin’s trial counsel specifically asked Dr. Gandy what caused meniscus tears. Dr. Gandy responded: “In a person a bit older, it can be from either wear and tear or an injury, either one.” On cross-examination, St. Dominic’s trial counsel asked Dr. Gandy whether he explained to Martin what could have caused her meniscus tears. Dr. Gan-dy replied: “I told her it could come from wear and tear or from an acute injury.”
¶ 27. Dr. Gandy did not opine as to whether Martin’s fall at the hospital actually caused or contributed to her injuries, thus leaving the jury to speculate as to causation. Since there is no direct testimony regarding a cause-in-fact, a jury could not use Dr. Gandy’s testimony to make an informed decision. Based on the foregoing, I find that the trial court did not err by granting the hospital’s motion for a directed verdict.
¶ 28. Martin also argues that the trial court misapplied case law in making its decision. For the sake of judicial efficiency, I would have declined to address the details of Martin’s argument. Nonetheless, the majority has examined the challenged citations, as have I. See City of Jackson v. Spann, 4 So.3d 1029, 1038-39 (¶¶ 33-36) (Miss.2009) (ruling that an award of future medical costs was error where the doctor’s testimony regarding those costs was a guess and not based upon a reasonable degree of medical certainty); Kidd, 951 So.2d at 626-27 (¶¶ 17-20) (finding that the trial court’s order prohibiting the admission of the treating physician’s testimony regarding the cost of future surgeries was not an abuse of discretion where the physician did not express his opinion to a reasonable degree of medical certainty). While the cases challenged by Martin are factually distinguishable from her case, the cases did provide statements of law that were applicable to the issues before the trial court. Thus, I disagree with the majority’s opinion, and find that the trial court did not misapply the case law used to support its ruling.
¶ 29. Further, I also dissent with the majority’s discussion of breach of duty. In its opinion, the majority has addressed whether Martin provided sufficient evidence to create a question of fact as to whether the hospital failed to warn Martin of the dangerous condition of the freshly waxed floors. However, neither Martin nor the hospital raised this issue in their briefs, nor does it appear that either party challenged this issue at trial.
¶ 30. We recognize that issues not brought on direct appeal may be reviewed under the plain-error doctrine. However, “[i]n order to reverse under the plain error doctrine, the reviewing court must find both error and harm.” HWCC-Tunica, Inc. v. Jenkins, 907 So.2d 941, 944 (¶ 7) (Miss.2005) (citation omitted). The majority opinion does not address either error or harm. Therefore, I respectfully must also dissent from the majority’s review of this issue.
MYERS AND BARNES, JJ., JOIN THIS OPINION.